1999 ME 72

**David W. CLINE et al.**

v.

**MAINE COAST NORDIC et al.**

Supreme Judicial Court of Maine.

Argued March 3, 1999.

Decided May 5, 1999.

William N. Ferm (orally), Ross & Ferm, LLC, Ellsworth, for plaintiffs.

Edward F. Bradley Jr. (orally), Portland, for defendants.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] David W. Cline and David J. Cline appeal from a judgment entered in the Superior Court (Washington County, *Marsano, J.*) dismissing their complaint for declaratory judgment. The complaint sought a declaration of the rights between a weir license granted to the Clines by the Town of Cutler and an aquaculture lease granted to Maine Coast Nordic by the Department of Marine Resources. Contending that the Superior Court erred by dismissing their complaint, the Clines argue that they are not attempting to relitigate the granting of Maine Nordic's aquaculture lease, but rather that they seek only to resolve what they describe as a conflict between their weir license and Maine Nordic's aquaculture lease. We disagree and affirm the Superior Court's dismissal.

[¶ 2] In September of 1992, pursuant to 12 M.R.S.A. §§ 6072 and 6073 (1994 & Supp. 1998), Maine Nordic applied to the Department of Marine Resources for approval of an aquaculture lease to cultivate and raise salmon in Cutler, Maine. The proposed aquaculture site was in the same location of Cutler Harbor as a fishing weir,[1] licensed to the

---

1.  A fish weir is defined as

a fixed structure erected and maintained during part of each fishing season in the tidewat-

Clines by the Town of Cutler in 1982. *See* 38 M.R.S.A. § 1022 (1989 &. Pamph. 1998).

[¶ 3] In April of 1993, the Clines attended and participated in a hearing, held by the Department, to consider the aquaculture lease application. Despite having failed to use the fishing weir in over five years, the Clines objected to the aquaculture lease because it would interfere with the fishing rights granted to them under the 1982 weir license. On September 29, 1993, the Department, in a written decision, granted the aquaculture lease. The decision specifically noted that

[t]he owner of the abandoned weir ... testified that his weir was dressed and ready to fish up until the time the applicant began its operation on the other side of the harbor in 1988. He said he has not done anything to the weir since that time because there were no "fish around." He produced a letter dated December 31 1992 signed by the [Department] commissioner stating that this weir met all the requirements of Maine's weir law, 38 M.R.S.A. Chapter 8.[2]

The Clines, however, admitted that they had failed to inspect the fishing weir in several years and that they were aware that the netting and weir stakes were currently on the ocean floor.

[¶ 4] In determining the potential impact the proposed aquaculture lease would have on surrounding fishing rights, the Department took into consideration the Clines' fishing weir and weir license. It determined that the weir was in disarray, that it could not be used without extensive construction and repair, and that the Clines had failed to meet the maintenance requirements set forth in 38 M.R.S.A. § 1023. A selectman from the Town of Cutler stated that the Town's position was that the Clines did not have a permit for their weir because they had not filed the appropriate records with the Town since 1989. The Department approved the aquaculture lease after concluding that, because the Clines had failed to utilize the weir in several years, had failed to file the appropriate records with the Town, had failed to maintain the weir in accordance with the weir statute, and had indicated that they had no plans to fish with the weir until the aquaculture farm was removed, the aquaculture lease would not interfere with the fishing rights granted under the weir license.

[¶ 5] In September 1993, prior to issuance of the decision, the Clines contacted the Department regarding the status of its decision and were told that no decision had been rendered. Although the Clines appeared at the hearing and objected to Maine Nordic's lease, they failed to intervene as parties to the proceeding pursuant to 5 M.R.S.A. § 9054 (1989)[3] or otherwise assert party status as defined in 5 M.R.S.A. § 8002(7) (1989).[4] Because the Clines were not parties

---

er, constructed of at least 25 spilings or stakes fastened together by binders, surrounded by brush, lath racks or netting, forming the catch pound into which fish are led or guided by one or more fixed leaders constructed of spiling or stakes not more than 20 feet apart and at least 100 feet long, fastened together by binders surrounded by lath racks, brush or netting and from which catch pound they cannot readily escape.

38 M.R.S.A. § 1021 (1989).

2. Title 38 M.R.S.A. § 1023 (Supp.1998) provides that

[t]he license for the building or extension of a fish weir or trap issued under section 1022 or any right or privilege granted by the Legislature for the building or extension of any such fish weir or trap *shall terminate and become void* unless the weir or trap is built within one year from the date of the license or the grant of that right or privilege and *maintained in good faith for the duration of the license.* (Emphasis added.)

A selectman from the Town of Cutler testified that the Department had erred by sending the December 31, 1992, letter because the Clines had failed to maintain the weir.

3. Title 5 M.R.S.A. § 9054(1) provides that

[o]n timely application made pursuant to agency rules, the agency conducting the proceedings shall allow any person showing that he is or may be, or is a member of a class which is or may be, substantially and directly affected by the proceeding, or any other agency of. federal, state, or local government, to intervene as a party to the proceeding.

4. Title 5 M.R.S.A. § 8002(7) defines party as

A. The specific person whose legal rights, duties or privileges are being determined in the proceeding;
B. Any person participating in the adjudicatory proceeding pursuant to section 9054, subsection 1 or 2; and

to the action, they did not receive written or verbal notification of the September 29, 1993 Department decision until December 15, 1993, when they received notice as a result of a legal notice published in the *Machias Valley News Observer*. The Clines, shortly after learning of the decision, filed a petition for judicial review of the Department's decision to grant the aquaculture lease, pursuant to M.R. Civ. P 80C. The Superior Court dismissed the claim as untimely. The Clines did not appeal that dismissal.

[¶ 6] In March of 1998, pursuant to 14 M.R.S.A. § 5954 (1980), the Clines filed this complaint for declaratory judgment, seeking clarification of the parties' rights with respect to the fishing weir license and the aquaculture lease. The complaint alleges that the Clines hold a valid weir license and Maine Nordic holds a valid aquaculture lease for use of the same portion of Cutler Harbor and *that the two uses are incompatible*. In granting Maine Nordic's motion to dismiss, the court concluded that because the Clines had failed to appeal the Superior Court's previous dismissal of their appeal of the grant of the aquaculture lease, they were estopped from "relitigating issues finally decided by the Superior Court's denial of [their] 80C Appeal."

[¶ 7] The Clines contend that the court erred by granting Maine Nordic's motion to dismiss because they do not seek to relitigate the granting of the aquaculture lease but rather petitioned the court to resolve a conflict between their valid fishing weir license and Maine Nordic's valid aquaculture lease, two incompatible uses of the same property.

[¶ 8] Because the matter is before us on appeal from the judgment of a motion to dismiss, "[w]e view the material allegations of the complaint as admitted and we examine the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Dexter v. Town of Norway*, 1998 ME 195, ¶ 7, 715 A.2d 169, 171 (citations omitted). We must therefore assume that the Clines' weir license and Maine Nordic's aquaculture lease are valid, that each would utilize the same portion of Cutler Harbor, and that the two uses are incompatible.

[¶ 9] Collateral estoppel, or issue preclusion, is the prong of res judicata that "prevents the relitigation of factual issues already decided if 'the identical issue was determined by a prior final judgment, and . . . the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding.'" *Perry v. H.O. Perry & Son Co.*, 1998 ME 131, ¶ 6, 711 A.2d 1303, 1305 (quoting *Van Houten v. Harco Constr., Inc.*, 655 A.2d 331, 333 (Me.1995)). We have specifically recognized that collateral estoppel is applicable to administrative proceedings, concluding that "final adjudication in an administrative proceeding before a quasijudicial municipal body has the same preclusion effect as a final adjudication in a former court proceeding.'" *Peterson v. Town of Rangeley*, 1998 ME 192, ¶ 11, 715 A.2d 930, 933 (quoting *Town of North Berwick v. Jones*, 534 A.2d 667, 670 (Me.1987)).

[¶ 10] The Clines contend that collateral estoppel does not operate to preclude the declaratory judgment action because the validity of their weir license was not adjudicated at the administrative hearing, and even if it were, the Department lacked authority to terminate the license. Although we agree that the validity of the weir license was not the subject of the hearing on the aquaculture lease, and that the Town of Cutler is the issuing authority for fishing weir licenses, nevertheless, because (1) the aquaculture lease was validly granted and the Clines are collaterally estopped from attacking it, and (2) the use of the weir is incompatible with the aquaculture lease, the dismissal of the Clines complaint for declaratory judgment was appropriate.

[¶ 11] The Department held a public hearing to consider Maine Nordic's application for an aquaculture lease, not to address the validity of the Clines' fishing weir license. The Department determined that the Clines had failed to maintain the weir in accordance with 38 M.R.S.A. § 1023, which provides that

C. Any agency bringing a complaint to Administrative Court under section 10051.

a weir license "shall terminate and become void" unless the weir is maintained in accordance with the statute. It made that finding, however, in the context of determining that the aquaculture lease did not "unreasonably interfere with fishing or other uses" of the proposed portion of Cutler Harbor. The validity of the weir license was not directly addressed.

[¶ 12] Although the validity of the weir license was not the specific subject to be determined at the public hearing on the aquaculture lease, the granting of the lease had a direct impact on whether the weir could be used, and had the practical effect of rendering the weir license useless. The Department granted Maine Nordic's application for an aquaculture lease after determining that it would not interfere with surrounding fishing rights. Any rights the Clines had by virtue of holding the license for the weir were necessarily included in those fishing rights considered by the Department. If the Clines believed that the aquaculture lease would interfere with their weir license or objected to it for any reason, and they did, they had an obligation to participate fully in the hearing, and to appeal a decision adverse to their interests. The Clines did participate in the hearing, and appealed the Department's decision. The Superior Court, however, dismissed that appeal as being untimely, and the Clines failed to appeal that dismissal, rendering the Department's grant of the aquaculture lease final and not subject to collateral attack.

[¶ 13] Although the Clines admit they are collaterally estopped from attacking the grant of the aquaculture lease, they contend that they should not be precluded from obtaining a judgment in this declaratory judgment action because they do not seek to relitigate the granting of the aquaculture license, but rather seek a judicial declaration of the parties' rights. In the circumstances of this case, however, the request for a declaratory judgment of necessity attacks the validity of the aquaculture lease. The Clines admit that the portion of Cutler Harbor formerly occupied by their weir cannot simultaneously be used for fishing with a weir and as an aquaculture site. The Department determined that the aquaculture lease would not interfere with fishing rights surrounding the lease location. The forum for challenging that determination was the Rule 80C appeal brought by the Clines but subsequently dismissed. That decision is now final and not subject to additional attack. The premise underlying the Clines complaint for declaratory judgment is that the property rights held by Maine Nordic and the Clines conflict and the conflict requires resolution. Any conflict, however, was resolved by the Department at the administrative hearing and the conflict was resolved against the Clines. The Clines are collaterally estopped from attacking (1) the Department's determination that the aquaculture lease would not interfere with surrounding fishing rights, and (2) the scope of the aquaculture lease.

[¶ 14] Accordingly, the court did not err by dismissing the Clines complaint for declaratory judgment because they are estopped from attacking any portion of the aquaculture lease.[5]

The entry is:

Judgment affirmed.

5. We recognize that because the validity of the weir license was never directly adjudicated, the Clines may, theoretically, still possess a valid weir license, nevertheless, subject to Maine Nordic's aquaculture lease. If the Clines seek to pursue a judicial declaration of the validity of their weir license, the proper party to that action would be the Town of Cutler and not Maine Nordic. Such an action, however, may be a "fool's errand." The Clines admit that the use described in their weir license and the use described in Maine Nordic's aquaculture lease are incompatible, an admission that renders the weir license useless at least for the duration of the aquaculture lease. Moreover, a selectman from the Town of Cutler testified that its position was that the Clines did not have a valid license for their weir because they had not filed the appropriate records with the Town since 1989. Unless the position of the Town has changed, a judicial action would result only in the Town reiterating its position and formally terminating the weir license.